## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CATHY CONN**, | |
| Plaintiff, | |
| v. | Case No. 13-cv-01810 (CRC) |
| **AMERICAN NATIONAL RED CROSS**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

This case presents several issues of first impression in this Circuit: whether the American

National Red Cross ("Red Cross"), due to its status as a "[f]ederally chartered instrumentality of

the United States," 36 U.S.C. § 300101, is immune from punitive damages under the Americans

with Disabilities Act ("ADA"), liquidated damages under the Age Discrimination in

Employment Act ("ADEA"), and trial by jury under either statute. At stake is the claim of

former Red Cross employee Cathy Conn, who was fired from her job as a director in the

organization's blood-program auditing division. The Red Cross claims she was terminated for

insubordination and sub-par performance. Conn counters that she was actually fired because of

her age and disability—she was 59 years old and suffered from depression, anxiety, and

insomnia at the time. On February 25, 2016, the Court denied the Red Cross's motion for

summary judgment on liability, holding that Conn had produced sufficient evidence for a

reasonable factfinder to conclude that her supervisor's proffered reasons for terminating her were

pretexts for age and disability discrimination. See Conn v. Am. Nat'l Red Cross, No. 13-cv-

01810, 2016 WL 755606, at *1 (D.D.C. Feb. 25, 2016).

The Court is now tasked with determining who that factfinder should be: a jury or the

Court itself. The Court is also called upon to determine what types of damages the factfinder

may award if the Red Cross is found liable—specifically, whether Conn may seek punitive damages under the ADA and liquidated damages under the ADEA.  Because the Court finds that Congress has waived the Red Cross's sovereign immunity with respect to those damages and trial by jury under both statutes, it will deny the remainder of the Red Cross's motion for partial summary judgment on damages and deny in full its motion for a bench trial.

## I.      Background

The factual background of this case and Conn's claims is fully set out in the Court's earlier memorandum opinion on the Red Cross's motion for summary judgment on liability.  See Conn, 2016 WL 755606, at *1–2.  To explain how the Court reached today's ruling, it is more appropriate here to begin with a discussion of the history and purpose of the Red Cross and its place in the structure of the federal government, before moving to an analysis of the scope of the Red Cross's sovereign immunity and the extent to which Congress has waived that immunity.

As the Supreme Court explained in holding the Red Cross to be immune from state taxation,

> Congress chartered the present [American National] Red Cross in 1905, subjecting it to governmental supervision and to a regular financial audit by the Defense . . . Department.  Its principal officer is appointed by the President, who also appoints seven (all government officers) of the remaining 49 Governors.  By statute and Executive Order there devolved upon the Red Cross the right and the obligation to meet this Nation's commitments under various Geneva Conventions, to perform a wide variety of functions indispensable to the workings of our Armed Forces around the globe, and to assist the Federal Government in providing disaster assistance to the States in time of need.  Although its operations are financed primarily from voluntary private contributions, the Red Cross does receive substantial material assistance from the Federal Government.  And time and time again, both the President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as an arm of the Government.[1]

---

[1] Congress has since amended the Red Cross's charter to replace the fifty-member board with a twelve-to-twenty-member board, the chairman of which is appointed by the President of the United States upon a recommendation by the Board.  36 U.S.C. § 300104(a)(3)(A)(i).

2

Dep't of Employment v. United States, 385 U.S. 355, 359–60 (1966) (citations and footnotes

omitted).  The Court recognized, however, a number of "respects in which the Red Cross differs

from the usual government agency—e.g., in that its employees are not employees of the United

States, and that government officials do not direct its everyday affairs."  Id. at 360.

In 2007, Congress passed the American Red Cross Governance Modernization Act,

codifying the Red Cross's status as "a Federally chartered instrumentality of the United States,"

36 U.S.C. § 300101, and emphasizing that "it has the rights and obligations consistent with that

status," Pub. L. 110-26, 121 Stat. 105 (2007).  See id. ("The United States Supreme Court held

[t]he American National Red Cross to be an instrumentality of the United States, and it is in the

national interest that the Congressional Charter confirm that status and that any changes to the

Congressional Charter do not affect the rights and obligations of The American National Red

Cross to carry out its purpose.").

One of the privileges that accompanies federal-instrumentality status is sovereign

immunity.  See, e.g., In re Sparkman, 703 F.2d 1097, 1101 (9th Cir. 1983) ("The sovereign,

along with its agencies and instrumentalities, enjoys immunity from suit unless it waives that

immunity." (citing Fed. Hous. Admin. v. Burr, 309 U.S. 242, 244 (1940))).  Nevertheless, in its

original charter, Congress gave the Red Cross the power to "sue and be sued in courts of law and

equity," Congressional Charter of the American National Red Cross § 5(a)(5), thereby

"abrogat[ing] [its] immunity" in certain respects, Burr, 309 U.S. at 249.  The dispute in this case

---

Congress also required the creation of an advisory council to the Board, which is "composed of
no fewer than [eight] and no more than [ten] members, each of whom [is] appointed by the
President from principal officers of the executive departments and senior officers of the Armed
Forces."  Id. § 300104(d)(1)–(2).

centers on that sue-and-be-sued clause and the extent to which Congress abrogated the Red

Cross's sovereign immunity by including it in the charter.

## II.    Legal Standard

### A.    <u>The Relevant Framework</u>

Many courts in other jurisdictions have addressed, as a general matter, whether the Red

Cross is amenable to jury trials and subject to punitive damages.  Not only have these courts

failed to find common ground on these questions, they have also struggled to agree on a common

framework for answering them.  The confusion in this area is understandable, for the Supreme

Court has offered guidance that points in opposite directions on the relevant standard for

analyzing waivers of sovereign immunity.

On the one hand, the "Court has long decided that limitations and conditions upon which

the Government consents to be sued must be *strictly* observed and *exceptions thereto are not to*

*be implied*." <u>Lehman v. Nakshian</u>, 453 U.S. 156, 161 (1981) (emphases added) (quoting <u>Soriano</u>

<u>v. United States</u>, 352 U.S. 270, 276 (1957)) (internal quotation marks omitted).  Applying this

principle, the Supreme Court has held, for example, that "a plaintiff in an action against the

United States has a right to trial by jury only where Congress has *affirmatively and*

*unambiguously* granted that right by statute." <u>Id.</u> at 168 (emphasis added).  On the other hand,

"Congress . . . has waived the sovereign immunity of certain federal entities . . . by including in

the[ir] enabling legislation provisions that they may sue and be sued." <u>Loeffler v. Frank</u>, 486

U.S. 549, 554 (1988).  "[S]uch waivers by Congress of governmental immunity" are to be

"*liberally* construed." <u>Id.</u> (alteration in original) (quoting <u>Burr</u>, 309 U.S. at 245) (internal

quotation marks omitted).  "The presumption" is that a sue-and-be-sued "clause *fully* waives [a

federal agency's] immunity." <u>FDIC v. Meyer</u>, 510 U.S. 471, 472 (1994) (emphasis added); <u>see</u>

4

also Gregory C. Sisk, Litigation with the Federal Government § 3.22 (4th ed. 2006) ("With these types of agencies and entities, sovereign immunity is at its lowest ebb."). Therefore, for purposes of assessing a federal entity's immunity from suit and the incidents thereof, which presumption applies is critical.

Some courts have taken the view that suits against the Red Cross are, for all intents and purposes, suits against the United States and have therefore applied the Lehman presumption of narrow waiver in assessing the Red Cross's sovereign immunity.  See, e.g., Barton v. Am. Red Cross, 826 F. Supp. 412, 413 (M.D. Ala. 1993) ("[T]he court remains convinced that the Red Cross is entitled to the *same* immunities from litigation as those enjoyed by the federal government, including immunity from trial by jury." (emphasis added)); Berman v. Am. Nat'l Red Cross, 834 F. Supp. 286, 292 (N.D. Ind. 1993) ("Congress did not affirmatively and unambiguously grant the right to civil jury trial by statute as is required by the Lehman holding.").  Those courts essentially equated the Red Cross with the sovereign itself, for which "the general rule [is] that waivers of sovereign immunity are to be read narrowly."  Meyer, 510 U.S. at 480 (1994)

Others have disagreed, concluding that Burr-Loeffler, and not Lehman, "provides the correct analysis in this situation."  Harrington v. Am. Nat'l Red Cross, 31 F. Supp. 2d 703, 705 (E.D. Mo. 1999); see also Marcella v. Brandywine Hosp., 47 F.3d 618, 624 (3d Cir. 1995) (applying Burr); Doe v. Am. Nat'l Red Cross, 847 F. Supp. 643, 647 (W.D. Wis. 1994) (applying Burr-Loeffler and noting that "Lehman was a suit against the federal government itself, rather than a suit against a federal instrumentality.  The presumption runs the opposite way in suits against federal instrumentalities . . . ."); cf. McGee v. Tucoemas Fed. Credit Union, 153 Cal. App. 4th 1351, 1358 (2007) ("An entity is not entitled to the same immunities as the United

States simply by virtue of its federal instrumentality status." (citing <u>Arkansas v. Farm Credit Servs. of Central Ark.</u>, 520 U.S. 821, 832 (1997)).  Those courts have distinguished between the Red Cross—as a sue-and-be-sued entity that merely functions as an instrumentality of the United States—and the United States itself as the sovereign, finding that the Red Cross is thus not entitled to have its waiver read narrowly.

The Supreme Court's decision in <u>FDIC v. Meyer</u>, 510 U.S. 471 (1994), reveals that the latter camp has it right.  In <u>Meyer</u>, the Court followed the <u>Burr-Loeffler</u> analysis and applied the liberal-construction principle to the waiver of sovereign immunity for the Federal Deposit Insurance Corporation ("FDIC").  The FDIC, to which the Supreme Court repeatedly referred as "an agency of the Federal Government," <u>see, e.g.</u>, <u>id.</u> at 473, is subject to much more significant federal oversight and control than the Red Cross.  Between twelve and twenty individuals make up the Red Cross's governing board, only the chairman of which is appointed by the President. <u>See</u> 36 U.S.C. § 300104(a)(3)(A)(i).  By contrast, the FDIC's Board of Directors consists of five individuals, one of whom is required to be the Comptroller of Currency of the United States, one of whom is required to be the Director of the Consumer Financial Protection Bureau, and the other three of whom are appointed directly by the President with the advice and consent of the Senate.  In addition, both the chairperson and vice chairperson of the FDIC are designated by the President with the advice and consent of the Senate.  <u>See</u> 12 U.S.C. § 1812.

It would be odd indeed if the Red Cross were entitled to a stronger presumption against waiver of its sovereign immunity than "a federal agency" the entire leadership of which is subject to presidential nomination and Senate confirmation.  If <u>Burr-Loeffler</u> provides the mode of analysis for interpreting the FDIC's sue-and-be-sued clause, so too does it provide the relevant framework here.  Moreover, despite apparently having advocated the <u>Lehman</u> standard in prior

cases, the Red Cross acknowledges here that the Burr-Loeffler framework controls.  See Def.'s

Reply Supp. Mot. Bench Trial 4.  The Court will therefore liberally construe the sue-and-be-sued

clause in the Red Cross's charter and presume that, absent some indication to the contrary, that

"clause fully waives [its] immunity."  Meyer, 510 U.S. at 472.

        B.     The Burr-Loeffler Framework

     The touchstone in applying Burr-Loeffler is that "waivers by Congress of governmental

immunity"—in the form of sue-and-be-sued clauses—"in the case of . . . federal instrumentalities

[are to] be *liberally construed*."  Burr, 309 U.S. at 245 (emphasis added).  "Encompassed within

this liberal-construction rule is the principle 'that the words 'sue and be sued' normally include

the natural and appropriate incidents of legal proceedings.'"  Loeffler, 486 U.S. at 555 (quoting

Reconstr. Fin. Corp. v. J.G. Menihan Corp., 312 U.S. 81, 85 (1941)).  And generally, when

Congress authorizes federal instrumentalities to sue or be sued, "it use[s] those words in their

usual and ordinary sense."  Burr, 309 U.S. at 246.  Therefore, the Supreme Court has held, when

Congress establishes a federal entity—which ordinarily would be protected by sovereign

immunity from all aspects of civil liability and litigation—and "launche[s] [it] into the

commercial world and endow[s] it with authority to 'sue or be sued,'" then "it must be

presumed" that Congress intended that entity to be as "amenable to judicial process [as] a private

enterprise under like circumstances would be."  Id. at 245.  In other words, when Congress

authorizes a federal entity to sue or be sued, a court should interpret that authorization as a

waiver of that entity's sovereign immunity with regard to "all civil process incident to the

commencement or continuance of legal proceedings," id., that is, "the natural and appropriate

incidents of legal proceedings," Loeffler, 486 U.S. at 555.

     It is not always clear, though, what constitutes a natural or appropriate incident of the

commencement or continuance of a legal proceeding.  To date, the Supreme Court has held that "[g]arnishment and attachment commonly are part and parcel of the process . . . for the collection of debts" and therefore fit within this category when "provided [for] by statute."  <u>Burr</u>, 309 U.S. at 245–46.  So too does prejudgment interest "to the extent that interest is recoverable against a private party as a normal incident of suit."  <u>Loeffler</u>, 486 U.S. at 557.  Therefore, federal entities that Congress has authorized to sue and be sued are typically stripped of their sovereign immunity from a plaintiff's pursuit of garnishment, attachment, and prejudgment interest.

The Supreme Court's decision in <u>Meyer</u> further clarifies what it means for a sue-and-be-sued entity to face the natural and appropriate incidents of legal proceedings.  Unless one of a limited set of exceptions applies, the Court explained, an agency or other federal entity with a sue-and-be-sued clause cannot "escape the liability that a private enterprise would face under similar circumstances."  510 U.S. at 482.  Interpreting the waiver of sovereign immunity effected by a sue-and-be-sued clause thus requires courts to "look to the liability of private businesses for guidance."  <u>Id.</u>; <u>see also id.</u> ("[The Supreme Court has] looked to the liability of a private enterprise as a *floor* below which [an] agency's liability could not fall.").  "[U]nder <u>Burr</u>[,] not only must" this Court "liberally construe the sue-and-be-sued clause, but also [it] must presume that the [instrumentality's] liability is *same as that of any other business* . . . [unless a] showing has been made to overcome that presumption."  <u>Franchise Tax Bd. of Cal. v. U.S. Postal Serv.</u>, 467 U.S. 512, 520 (1984) (emphasis added).  "Absent such a showing, agencies 'authorized to sue and be sued' are presumed to have *fully waived* immunity."  <u>Meyer</u>, 510 U.S. at 481 (emphasis added) (quoting <u>Int'l Primate Prot. League v. Adm'rs of Tulane Ed. Fund</u>, 500 U.S. 72, 86 n.8 (1991)).  Generally speaking, then, if a private entity in the same context would face a form of liability or otherwise be subject "to a particular incident of suit . . . as a matter of

course," so too would a public entity vested with the power to sue or be sued.  Meyer, 510 U.S. at 482.

The question remains how a federal entity with a sue-and-be-sued clause can make the "'clear' showing of congressional intent that is necessary to overcome the presumption that such a clause fully waives immunity."  Id. at 472.  Obviously, if Congress explicitly limits the scope of an entity's sue-and-be-sued clause, Congress's intent is plain.  But

> Burr makes it clear that sue-and-be-sued clauses cannot be limited by implication unless there has been a "clea[r] show[ing] that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense."

Id. at 480 (alterations in original) (quoting Burr, 309 U.S. at 245).  In this case, as in any where a sue-and-be-sued entity seeks to avoid some aspect of liability or judicial process, see id. at 481, it is the Red Cross's burden to overcome the presumption of a complete waiver of immunity.

## III.    Analysis

Like the FDIC in Meyer, the Red Cross "does not attempt to make the 'clear' showing of congressional purpose necessary to overcome the presumption that immunity has been waived." 510 U.S. at 481.  Curiously, "the Red Cross does not argue the applicability of the Burr exceptions in [its] motion[s]," yet neither does it "concede that the exceptions do not apply." Def.'s Mot. Partial Summ. J. Damages 14 n.8.  The Court thus lacks any basis on which to conclude that the Red Cross has met its burden to overcome the presumption that its sue-and-be-sued clause has fully waived its immunity.  Regardless, the Court is doubtful that the Red Cross could make the required clear showing of Congress's intent to limit its waiver of immunity because, as discussed below, Congress appears to have indicated the exact opposite—at least in the context of the ADA and ADEA.  This affirmative indication of congressional intent, then,

"puts extra icing on a cake already frosted." <u>Yates v. United States</u>, 135 S. Ct. 1074, 1093 (2015) (Kagan, J., dissenting).

Rather than address the <u>Burr</u> exceptions, the Red Cross primarily contends that its sue-and-be-sued clause has not waived its immunity against punitive damages or jury trials because neither is a "normal incident" of litigation. Consequently, in the Red Cross's view, the <u>Burr</u> exceptions are irrelevant. <u>See id.</u> at 14. This argument is doubly flawed. First, it ignores the <u>Franchise Tax Board</u> and <u>Meyer</u> cases, which together explain that sue-and-be-sued clauses are presumed to *fully* waive immunity, put a public entity's liability on par with that of a private entity in similar circumstances, and expose a public entity to the same judicial process that a private entity would face. Second, it rests on too narrow a conception of the phrase "normal incident." A normal incident of suit is one to "which private businesses are amenable as a matter of course." <u>Meyer</u>, 510 U.S. at 481. The most natural meaning of the term is any typical aspect or feature of litigation that a private party would encounter in a suit under the relevant statute. Both jury trials and punitive (or liquidated) damages meet that definition in suits under the ADA and the ADEA. "The correct question in this case is [thus] whether the instrumentality"—the Red Cross—can "show[] a special reason why the waiver of immunity should not extend to trial by jury or to the right to seek an award of punitive damages." <u>Doe</u>, 847 F. Supp. at 647. As the Court will now explain, the answer would appear to be no.

A.      <u>The Red Cross's Immunity from Trial by Jury</u>

Congress's intent is clear: The Red Cross, when sued pursuant to the relevant provisions of the ADEA and the ADA, is not immune from jury trials. Rather, it is as "amenable to judicial process [as] a private enterprise under like circumstances would be," <u>Loeffler</u>, 486 U.S. at 555, and is consequently subject to trial by jury if the plaintiff so elects.

Private parties sued under the ADA face jury trials as a matter of course, <u>see</u> 42 U.S.C. § 1981a(c)(1) ("If a complaining party seeks compensatory or punitive damages under this section . . . any party may demand a trial by jury."), as do private parties sued under the ADEA, <u>see</u> 29 U.S.C. § 626(c)(2) ("[A] person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter."). Absent a clear showing by the Red Cross of congressional intent to the contrary, it—like any private party—is subject to trial by jury when sued under these statutes.  <u>See</u> <u>Meyer</u>, 510 U.S. at 481.

The structure of the ADEA itself demonstrates Congress's intent that the Red Cross not be immune from trial by jury in this context.  The provision under which Conn sues here, 29 U.S.C. § 623, <u>see</u> Compl. Count Two, and which the Red Cross recognizes is the relevant provision, <u>see</u> Def.'s Mem. Supp. Mot. Summ. J. Liability 10, makes it unlawful for private employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age."  As noted above, jury trials are available to plaintiffs who bring claims under this section.  <u>See</u> 29 U.S.C. § 626(c)(2).  A separate provision, however—29 U.S.C. § 633a—applies to the federal government and requires personnel actions affecting employees to "be made free from any discrimination based on age."  Plaintiffs who bring claims pursuant to that section are *not* entitled to jury trials.  <u>Lehman</u>, 453 U.S. at 160.

Congress specifically subjected only the following "federal agencies" to the requirements of § 633a:

- military departments as defined in section 102 of Title 5 [referring to the Departments of the Army, Navy, and Air Force];

- executive agencies as defined in section 105 of Title 5 [referring to executive departments, government corporations that are owned or controlled by the Government of the United States, and independent establishments in the executive branch];

- the United States Postal Service and the Postal Regulatory Commission;

- those units in the government of the District of Columbia having positions in the competitive service;

- those units of the judicial branch of the Federal Government having positions in the competitive service;

- the Smithsonian Institution; and

- the Government Publishing Office, the Government Accountability Office, and the Library of Congress.

29 U.S.C. § 633a(a).  In <u>Lehman</u>, the Court held that no jury-trial right attached in suits brought under § 633a, "contrast[ing that section] with . . . 29 U.S.C. § 626(c) . . . , which authorizes civil actions against private employers and state and local governments, and which *expressly* provides for jury trials."  453 U.S. at 162.  Congress took pains to identify which federal entities should be treated as part of the federal government for purposes of the ADEA and placed those entities under the section of the statute where no jury-trial right exists.  Yet it subjected the Red Cross to potential liability under § 623 ("Prohibition of age discrimination"), and not § 633a ("Nondiscrimination on account of age in Federal Government employment").  In so doing, Congress expressed its intent that the Red Cross be treated like any private employer when a plaintiff sues alleging age discrimination.[2]

_____

[2] Notably, the Red Cross argues that "[t]here is no difference between the Red Cross and the [U.S. Postal Service] [that] suggests Congress meant for the same 'sue and be sued' language to have a different meaning in the Red Cross' charter than it does in the USPS' charter," Def.'s Reply Supp. Mot. Bench Trial 5.  Congress nonetheless explicitly subjected the Postal Service to the federally applicable ADEA provision to which no jury-trial right attaches, rather than to the provision at issue here.  The fact that Congress has specifically applied § 633a to certain sue-

The provision of the ADA at issue in this case and a related provision of another law—the Rehabilitation Act—are similarly informative.  The provision of the ADA under which Conn sues here, 42 U.S.C. § 12112, see Compl. Count One, and which the Red Cross agrees is the relevant statutory provision, see Def.'s Mem. Supp. Mot. Summ. J. Liability 11, makes it unlawful for covered entities to "discriminate against a qualified individual on the basis of disability" in certain employment-related contexts.  As the Court noted, jury trials are available to plaintiffs who bring claims against private employers under this section.  A separate provision of another law—the Rehabilitation Act, 29 U.S.C. § 794—applies in part to the federal government and prohibits discrimination in employment against a person "solely by reason of her or his disability."  Plaintiffs may bring claims pursuant to this section against "any Executive agency or . . . the United States Postal Service," id. (emphasis added), and are not entitled to jury trials when they do, e.g., Crawford v. Runyon, 79 F.3d 743, 744 (8th Cir. 1996).  The applicability of 42 U.S.C. § 12112 to the Red Cross, with its corresponding jury-trial right, lends additional support to the view that Congress did not intend to shield the Red Cross from a jury trial in a disability-discrimination suit like Conn's.

Not only has the Red Cross failed clearly to show that Congress intended its sue-and-be-sued clause to be anything other than a full waiver of immunity, the Court concludes that the statutory structure of the ADEA and the ADA underscore Congress's intent that the Red Cross

---

and-be-sued entities like the Postal Service, but subjected others—like the Red Cross—to § 623, supports the Court's conclusion that the Red Cross is not shielded from a jury trial for Conn's ADEA claim.

be placed in the same position as any private party sued under those statutes.  The Red Cross is therefore not entitled to a bench trial in this case.

                    **B.**    <u>The Red Cross's Immunity from Punitive and Liquidated Damages</u>

Congress's intent with respect to damages is similarly clear:  The Red Cross, when sued under the relevant provisions of the ADEA and the ADA, is not immune from liquidated or punitive damages.  Even though punitive damages may constitute "an extraordinary remedy," <u>Tuers v. Runyon</u>, 950 F. Supp. 284, 286 (E.D. Cal. 1996),[3] the Red Cross's "liability is the same as that of any other business" in the absence of a showing sufficient to overcome that presumption.  <u>Franchise Tax Bd. of Cal.</u>, 467 U.S. at 520.  This Court accordingly "look[s] to the liability of a private enterprise [in the same circumstances] as a *floor* below which [its] liability [should] not fall."  <u>Meyer</u>, 510 U.S. at 482.

Plaintiffs may seek punitive damages against private parties under the ADA, <u>see</u> <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 529 (1999), and liquidated damages against private parties under the ADEA, <u>see</u> <u>Trans World Airlines, Inc.</u>, 469 U.S. at 125.  Absent a clear showing by the Red Cross of congressional intent to the contrary, it—like any private party—is subject to liability for those damages if a plaintiff otherwise qualifies for them.  <u>See</u> <u>Meyer</u>, 510 U.S. at 481.[4]

---

[3] The same is true of liquidated damages under the ADEA, because "Congress intended for [those damages] to be punitive in nature," <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 125 (1985).  They are "double damages," <u>id.</u>, which are essentially "punitive" and "are 'not designed to compensate ADEA victims,'" <u>O'Gilvie v. United States</u>, 519 U.S. 79, 84 (1996) (quoting <u>C.I.R. v. Schleier</u>, 515 U.S. 323, 332 n.5 (1995)).

[4] The Court expresses no opinion as to whether Conn's evidence would entitle her to punitive or liquidated damages in this case.

The structure of the ADEA itself indicates Congress's intent that the Red Cross not be immune from liquidated damages. Section 626(b), which deals with enforcement of § 623, the provision under which the Red Cross is sued, "provides that the rights created by the [ADEA] are to be 'enforced in accordance with the powers, remedies, and procedures' of the Fair Labor Standards Act." Trans World Airlines, Inc., 469 U.S. at 125 (quoting § 626(b)). That Act, in turn, allows for the award of liquidated—*i.e.*, double—damages. The provision of the ADEA applicable to the federal government, § 633a, by contrast, does not provide for liquidated damages. Congress selected which federal entities should be treated as part of the federal government for purposes of the ADEA and, omitting the Red Cross, placed those entities under the section of the statute with no provision for liquidated damages. By subjecting the Red Cross to potential liability under § 623, and not § 633a, Congress has expressed its intent that the Red Cross be subject to the same liability as any private employer when a plaintiff sues alleging age discrimination.

As to disability discrimination, a complaining party under the ADA "may recover punitive damages . . . against a respondent (other than a government, government agency or political subdivision) if the [victim] demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(2), (b)(1). Yet "punitive damages may not be awarded in private suits brought under . . . § 504 of the Rehabilitation Act, [29 U.S.C. § 794]." Barnes v. Gorman, 536 U.S. 181, 189 (2002). Allowing the Red Cross to be sued under 42 U.S.C. § 12112—the disability-discrimination provision that allows for awards of punitive damages—sends a strong signal that Congress intended the Red

Cross to be amenable to suits for those damages—or, at a minimum, that Congress did not intend to limit the Red Cross's full waiver of immunity with respect to such damages.

The Red Cross seeks refuge in <u>In re Sparkman</u>, 703 F.2d 1097 (9th Cir. 1983), which held, joining several other Circuits, that "while the 'sue and be sued' clause in the enabling legislation for [a federal instrumentality] waives sovereign immunity from ordinary lawsuits, it does not subject [that instrumentality] to liability for punitive damages.  Such immunity must be waived *expressly*."  <u>Id.</u> at 1101 (emphasis added).  "[T]he <u>Sparkman</u> analysis," however, is "inconsistent with subsequent United States Supreme Court authority."  <u>McGee</u>, 153 Cal. App. 4th at 1359.  Specifically, it conflicts with the "contrary analytical framework [articulated] in <u>FDIC v. Meyer</u> . . . . There, the [C]ourt explained that 'sue and be sued' clauses cannot be limited by implication unless there has been a clear showing of one of three narrow exceptions."  <u>Id.</u>  It is thus appropriate to "start from the premise that" Congress has "waived immunity from punitive damages" with regard to the Red Cross until the Red Cross demonstrates to the contrary.  <u>Id.</u>

Again, the Red Cross has failed clearly to show that Congress intended its sue-and-be-sued clause to be anything other than a full waiver of immunity in this context, and the Court concludes that the statutory structure of the ADEA and the ADA demonstrate Congress's intent that the Red Cross face the same liability as any private party sued under those statutes.  The Red Cross is therefore not entitled to have Conn's claims for liquidated and punitive damages stricken.

## IV.     Conclusion

For the foregoing reasons, the Court will deny the Red Cross's motion for partial summary judgment on damages as to punitive damages under the ADA and liquidated damages

16

under the ADEA.  It will also deny the Red Cross's motion for a bench trial.  An order

accompanies this memorandum opinion.


                                       _____

                                       CHRISTOPHER R. COOPER

                                       United States District Judge

Date:   March 7, 2016